EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANGELA MARIE LEE, By and Through Next Friend, RENEE B. LEE, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )   No.  4:09CV1977 TIA |
| ALBERT LEE BORDERS, | )<br>)<br>) |
| Defendant. | )<br>) |

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court on Defendant Albert Lee Borders' Motion for Judgment Notwithstanding the Verdict or, In the Alternative, for a New Trial (Docket No. 116) and Plaintiff Angela Marie Lee's Response in Opposition to Defendant Borders' Motion for Judgment Notwithstanding the Verdict or, In the Alternative, for a New Trial.  Defendant filed a Reply thereto.

**I.     <u>Background</u>**

Plaintiffs originally filed suit against Defendants Albert Lee Borders, St. Charles Habilitation Center, and the Missouri Department of Mental Health in the Circuit Court of St. Charles County in a three-count petition.  On December 3, 2009, Defendants St. Charles Habilitation Center and Missouri Department of Mental Health removed the case to federal court on the basis that Counts II and III are brought under 42 U.S.C. § 1983 for alleged deprivation of Plaintiffs' right under the Fourth, Fifth, and Fourteenth Amendments.  On November 19, 2010, the undersigned granted Defendants St. Charles Habilitation Center and Missouri Department of Mental Health's Motion to Dismiss.

This matter was tried before a jury on April 9, 10, and 11, 2012.  On April 11, 2012, Defendant made oral motions for judgment as a matter of law at the close of Plaintiff's case and the close of all evidence contending that he was not acting under color of state.  The Court overruled both motions in open court and on the record.  On April 12, 2012, the jury returned a verdict in favor of Plaintiff Angela Marie Lee on each of her claims against Defendant Borders and awarded a total of $1,000,000.00 in compensatory damages and $3,000,000.00 in punitive damages. Defendant now moves for a Motion for Judgment Notwithstanding the Verdict or, in the Alternative, for a New Trial.[1]

**II.     Discussion**

Defendant merely argues matters previously argued throughout these proceedings. Motions for Judgment as a Matter of Law or for a New Trial are not vehicles through which a party may reargue previously presented arguments.  Rather, these motions serve to prevent manifest errors of law or fact, or to present newly discovered evidence.  This Court considered Defendant's arguments at the time of its rulings and has reviewed the pleadings, the record of each of its rulings and finds no manifest errors of law or fact which would justify granting a Rule 50 or 59 motion.  Defendant has failed to present any manifest errors of law or fact in the Court's rulings.

Moreover, the evidence presented supports the jury verdict.  As to the issue of damages, this Court finds that while very large, the damages award is  not constitutionally excessive. As the Court finds the jury's verdict to be reasonable in light of the evidence presented at trial, the Court will deny Defendant's motion.

---

[1]The undersigned notes that Defendant moves the Court for a judgment notwithstanding the verdict, however, under the Federal Rules of Civil Procedure, the motion is now a motion for judgment as a matter of law.  Fed.R.Civ.P. 50.

A.     **Renewed Motion for Judgment Notwithstanding the Verdict as a Matter of Law**

Defendant renews his motion for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure. The Court denied Defendant's motions for judgment as a matter of law at the close of Plaintiff's case and on the last day of trial at the close of all the evidence. Defendant sets forth no new basis for the renewed motion.

A motion for judgment as a matter of law should be granted only if the jury's verdict is utterly lacking in evidentiary support. In re Prempro Prods. Liab. Litig., 586 F.3d 547, 571 (8th Cir. 2009); see Foster v. Time Warner Ent. Co., 250 F.3d 1189, 1194 (8th Cir. 2001) ("Judgment as a matter of law is proper only when there is a complete absence of probative facts to support the conclusion reached so that no reasonable juror could have found for the nonmoving party.") (internal quotation marks and citation omitted). When deciding a Rule 50 motion, the Court must construe the evidence most favorably to the prevailing party and draw all inferences in its favor, denying the motion "if reasonable persons could differ as to the conclusions to be drawn from the evidence." W. Am., Inc. v. Aetna Cas. and Surety Co., 915 F.2d 1181, 1183 (8th Cir. 1990). The Court may not make credibility determinations or weigh the evidence. In re Prempro, 586 F.3d at 572 (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000)). Under these standards and in light of Defendant offering no additional argument, the motion must be denied.

      1.     **Color of State Law**

Defendant argues that the jury did not have a legally sufficient evidentiary basis from which to conclude that he acted under color of state law.

"The Supreme Court has not had occasion to consider the liability of a state actor under § 1983 for a sexual assault, but it has held that it is not necessary for there to be a precedent applying

the constitutional right to a "fundamentally similar" factual situation in order for a criminal defendant to know that he is violating the due process right to bodily integrity by committing sexual assault. U.S. v. Lanier, 520 U.S. 259, 268-72 (1997). The Supreme Court has been cautious about overextending the reach of substantive due process principles to avoid converting the Due Process Clause into a body of tort law. County of Sacramento v. Lewis, 523 U.S. 833, 848 (1998). See also DeShaney v. Winnebago County Dept. of Social Servs, 489 U.S. 189, 202 (1989).

The traditional definition of acting under color of state law requires that "the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." West v. Atkins, 487 U.S. 42, 49 (8th Cir. 1988). An official acts under color of state law even if he "abuses the position given him by the State ... while acting in his official capacity or while exercising his responsibilities pursuant to state law." Id. at 50. Generally, state employment is sufficient to render an individual a state actor. Id. at 49. "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." Id. at 50. Indeed, "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." U.S. v. Classic, 313 U.S. 299, 326 (1941).

The question whether Defendant acted under color of state law "turns on the nature and circumstances of [his] conduct and the relationship of that conduct to the performance of his official duties." Roe v. Humke, 128 F.3d 1213, 1216 (8th Cir. 1997). The Eighth Circuit has opined that the color of state law element of section 1983 suits requires that the defendant "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" Roe, 128 F.3d at 1215 (quoting West, 487 U.S. at 48). In order to

determine if a public employee is acting under color of state law, the court must examine the nature of the employee's conduct and its relationship to the performance of the employee's statutory duties. Id. at 1216.

In Roe, a police officer was accused of sexually molesting a girl whom he first met while working at a local school. The sexual contact occurred after she accompanied him, with her parent's permission, to his farm, and while he was off duty and out of uniform. See id. at 1214-15. The parents claimed that they would not have entrusted their daughter to the accused molester but for the fact that he was a police officer. The Eighth Circuit noted that even if that were true, the knowledge of the individual's status as a police officer alone by the child and her parents was "not sufficient to convert the actions [that the officer] took in the pursuit of his private interests into action taken under color of state law." Id. at 1217. Further, the Court considered cases where government defendants had been held liable under § 1983 for sexual abuse, noting that those cases uniformly "involved a defendant who was acting under pretense of his authority and who was purporting to exercise the power given to him by the state." Id. Cf. id. at 1216 (where police officer took plaintiff to his farm for his own personal pursuits while off duty and not wearing his uniform or badge or carrying a gun and was driving his own personal vehicle, "he was neither actually acting in his official capacity or exercising his responsibilities pursuant to state law, nor purporting to so act."). The Roe Court found that the officer "was neither actually acting in his official capacity or exercising his responsibilities pursuant to state law, nor purporting to so act."

The Eighth Circuit has weighed in on this issue and recognized an actionable claim under § 1983 for a substantive due process violation may accrue where a pubic official, a police officer, engaged in "sexual fondling and touching or other egregious sexual contact" under color of state law

and threatened adverse police action in making his unwanted advances. Haberthur v. City of Raymore, 119 F.3d 720, 723-24 (8th Cir. 1997). Likewise, in Rogers v. City of Little Rock, 152 F.3d 790 (8th Cir. 1998), the Eighth Circuit upheld a district court's finding that a police officer had sexually assaulted a woman in violation of her substantive due process rights when the officer pulled the woman over for a traffic violation and later followed her home under the guise of obtaining her missing proof of automobile insurance. At her home, the officer ordered her to disrobe, pushed her onto her bed, and had sexual intercourse with her. The Eighth Circuit opined that the facts supported the finding that the intercourse was nonconsensual and that the officer accomplished the rape through the exercise of coercive power that he possessed as a law enforcement officer. Id. at 796-97.

"[T]he construct - 'acting under color of state law - rarely depends on any single, easily determinable fact," such as employment status, but requires an examination of all the relevant circumstances. Martinez v. Colon, 54 F.3d 980, 986 (1st Cir. 1995). The Court agrees with Plaintiff the evidence clearly established that Defendant acted under color of state law, clothed with the authority of the state, but outside the scope of his authorized employment. Defendant, a kitchen worker at St. Charles Habilitation Center, performed basic kitchen duties as well as taking meals and supplies to the residents and cleaning dishes. Plaintiff entered the kitchen seeking to speak to another cook. Defendant advised Plaintiff the other cook was not available and asked if she needed anything else. The evidence established that Defendant was on duty working in his designated work area when the sexual assault on Plaintiff occurred. Defendant was not within ambit of personal pursuits as in Roe when the sexual contact occurred, but he was working within the facility in his designated work space. Accordingly, the Court finds that the evidence established that Defendant, an employee of the State of Missouri, acted under color of state law during the sexual contact with Plaintiff.

The evidence at trial established that Defendant worked for the state and had contact with Plaintiff because of his duties as a state employee. It is axiomatic that Defendant is a state actor and, as such, his conduct occurred "under color of state law." As noted by the Eighth Circuit, "[m]ere employment by a state or municipality does not automatically mean that a defendant's actions are taken under the color of state law." Ottman v. City of Independence, 341 F.3d 751, 762 (8th Cir. 2003) (quoting Kern v. City of Rochester, 93 F.3d 38, 43 (2d Cir. 1996)). The "dispositive issue is whether the defendant acted pursuant to power he or she possessed by state authority." Id. (quoting Edwards v. Wallace Cmty. Coll., 49 F.3d 1517, 1523 (11th Cir. 1995)).

The allegations of sexual assault at issue in the instant case have been found by the Eighth Circuit to support a constitutional violation of one's bodily integrity. Haberthur, 119 F.3d at 723. Defendant's conduct at issue is distinguishable from that in Haberthur and Rogers because the sexual contact was not accompanied by threats of official action if Plaintiff rebuffed or reported his behavior. Sexual assault can be a deprivation of the substantive due process right to bodily integrity. Rogers, 152 F.3d at 796; Haberthur, 119 F.3d at 723 (Eighth Circuit recognized that an actionable claim under § 1983 for substantive due process violation may accrue when public official engages in "sexual fondling and touching or other egregious sexual contact" under color of state law). Such violations need not occur through physical force. Rogers, 152 F.3d at 797. The Court finds the sexual assault by Defendant would certainly "shock the conscience," and therefore would be actionable as a substantive due process violation.

In this case, Plaintiff presented sufficient evidence during the three-day trial to allow a

reasonable jury to conclude that Defendant while working as an employee of the State of Missouri in his designated work space at Saint Charles Habilitation Center, a Missouri facility, sexually assaulted Plaintiff, a resident of the facility, without her consent. The evidence, in its totality and after review, supports the jury's conclusion that Defendant intentionally had anal intercourse with Plaintiff; this contact was offensive to Plaintiff; and such contact would be offensive to a reasonable person. The jury was presented with witness testimony and exhibits about the intercourse between Plaintiff and Defendant, which it undoubtedly considered in detail during its deliberations. It is not for this Court to simply set aside the jury's verdict because Defendant argues a different conclusion should have been drawn from the evidence. The evidence presented at trial does not change this conclusion and does not serve as a basis for disturbing the jury's verdict. For these reasons, the renewed motion for judgment as a matter of law will be denied.

### 2. **Inconsistent Testimony**

Defendant has not established that the evidence is insufficient to support the jury's verdict. Defendant merely reargues matters previously raised at trial. At trial, Plaintiff offered testimony from nurses, emergency room staff, police officers, and case managers establishing sexual contact between Plaintiff and Defendant. The Court considered Defendant's arguments at the time of its rulings and reviewed the record as to its ruling and finds no manifest errors of law or fact which would justify granting the motion.

### B. **Motion for New Trial**

Following a jury trial resulting in an adverse judgment, a party may move for a new trial under Rule 59(a)(1)(A) of the Federal Rules of Civil Procedure. Under this rule, "[a] new trial is appropriate when the first trial, through a verdict against the weight of the evidence, an excessive

damage award, or legal errors at trial, resulted in a miscarriage of justice." Gray v. Bicknell, 86 F.3d 1472, 1480 (8th Cir. 1996). A miscarriage of justice does not result whenever there are inaccuracies or errors at trial; instead, the party seeking a new trial must demonstrate that there was prejudicial error. Buchholz v. Rockwell Int'l Corp., 120 F.3d 146, 148 (8th 1997). Errors in evidentiary rulings or jury instructions are only prejudicial, and therefore only represent a miscarriage of justice that requires a new trial, where the error likely affected the jury's verdict. Diesel Machinery, Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 833 (8th Cir. 2005) (evidentiary rulings); Sherman v. Winco Fireworks, Inc., 532 F.3d 709, 720 (8th Cir. 2008) (jury instructions).

Consistent with the plain language of Rule 59, the court may grant a partial new trial solely on the issue of damages. Fed.R.Civ.P. 59(a)(1)(A); see, e.g., Powell v. TPI Petro., Inc., 510 F.3d 818, 824-25 (8th Cir. 2007) (remanding for partial new trial on damages). For example, a partial new trial on the issue of damages is appropriate when the jury's verdict is so grossly inadequate as to shock the conscience or to constitute a plain injustice. Taylor v. Howe, 280 F.3d 1210, 1211 (8th Cir. 2002); First State Bank of Floodwood v. Jubie, 86 F.3d 755, 759 (8th Cir. 1996). "Each case must be reviewed within the framework of its distinctive facts." Wilmington v. J.I. Case Co., 793 F.2d 909, 922 (8th Cir. 1986) (citing Hollins v. Powell, 773 F.2d 191, 197 (8th Cir. 1985)).

"In determining whether or not to grant a new trial, a district judge is not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences and conclusions or because judges feel that other results are more reasonable." King v. Davis, 980 F.2d 1236, 1237 (8th Cir. 1982). "[T]he 'trial judge may not usurp the function of a jury ... [which] weighs the evidence and credibility of witnesses.'" White v. Pence, 961 F.2d 776, 780 (8th Cir. 1992) (quoting McGee v. S. Pemiscot Sch. Dist., 712 F.2d 339, 344 (8th Cir. 1983)). "Instead, a district

judge must carefully weigh and balance the evidence and articulate reasons supporting the judge's view that a miscarriage of justice has occurred." King, 980 F.2d at 1237.

"The authority to grant a new trial ... is confided almost entirely to the exercise of discretion on the part of the trial court." Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 36 (1980). On the issue of damages, the propriety of the amount of a verdict "is basically, and should be, a matter for the trial court which has had the benefit of hearing the testimony and observing the demeanor of witnesses and which knows the community and its standards...." Wilmington, 793 F.2d at 922) (quoting Solomon v. Dehydrating Co. v. Guyton, 294 F.2d 439, 447-48 (8th Cir. 1961)). "[T]he assessment of damages is especially within the jury's sound discretion when the jury must determine how to compensate an individual for an injury not easily calculable in economic terms." Stafford Neurological Med., Inc., 811 F.2d 470, 475 (8th Cir. 1987); see also EEOC v. Convergys Customer Mgmt. Group, Inc., 491 F.3d 790, 798 (8th Cir. 2007).

**1.      Verdict Against Weight of Evidence**

Defendant argues that he is entitled to a new trial because each of the verdicts was against the weight of the evidence. "The grant of a motion for a new trial is appropriate only if the verdict is against the weight of the evidence and ... allowing it to stand would result in a miscarriage of justice." Murphy v. Missouri Dept. of Corrections, 506 F.3d 1111, 1116 (8th Cir. 2007) (internal quotation marks and citation omitted). "Where reasonable minds can differ in evaluating the credible evidence, a new trial based on the weight of the evidence should not be granted." McRaven v. McMurrian, 2010 WL 582349, *1 (E.D.Ark. Feb. 11, 2010) (citing Jacobs Mfg. Co. v. Sam

Brown Co., 19 F.3d 1259, 1267 (8th Cir. 1994)). Here, there was ample evidence to support the jury's findings.

### 2. Daniel Weinstein's Testimony

Defendant next argues that Dr. Daniel Weinstein was permitted to testify, over objection, that tremendous resources would be needed to treat Plaintiff even though his expert report lacked any reference to the cost of treatment Plaintiff would need in the future.

The evidence at trial established that Plaintiff would require significant resources for her care and treatment. Testimony from Gary Scheffler and Karen Souza was consistent with the testimony of Dr. Weinstein. Thus, the evidence presented supports the jury verdict.

### 3. Jury Instruction - Consent

Defendant next argues that instructional error warrants a new trial. "The district court is afforded broad discretion in choosing the form and substance fo the jury instructions ...." Friedman & Friedman, Ltd. v. Tim McCandless, Inc., 606 F.3d 494, 499 (8th Cir. 2010). "The instructions need be neither technically perfect nor a model of clarity." Id. Jury instructions must, when "taken as a whole, fairly and adequately represent the evidence and applicable law in light of the issues presented to the jury in a particular case." Swipies v. Kofka, 419 F.3d 709, 716 (8th Cir. 2005) (internal quotation marks and citation omitted). "An erroneous instruction warrants a new trial only if the error misled the jury or had a probable effect of the verdict." Friedman, 606 F.3d at 499 (internal quotation marks and citation omitted).

Here, Defendant complains of instructional error regarding the instruction defining consent.

Instruction No. 8

Consent or lack of consent may be expressed or implied. Assent does not constitute consent if it is given by a person who lacks the mental capacity to authorize the conduct of sexual contact and such mental incapacity is manifest or known to the actor.

(ECF No. 105, Instruction No. 8).

Defendant contends the instruction permitted the jury to find Defendant negligently violated Plaintiff's constitutional rights and conflicted with the Missouri Approved Instruction. The Court rejects these arguments again for the same reasons as stated on the record at trial.

**4.      Excessive Damage Awards**

"Compensatory damages are recoverable in §1983 actions for injuries including personal humiliation, and mental anguish and suffering." Rogers, 152 F.3d at 798 (internal quotation and citation omitted). As noted by the Eighth Circuit, "awards for pain and suffering are highly subjective and should be committed to the sound discretion of the jury, especially when the jury is being asked to determine injuries not easily calculated in economic terms." Eich v. Bd. of Regents for Cent. Mo. State Univ., 350 F.3d 752, 763 (8th Cir. 2003) (internal quotation marks and citations omitted).

Given the circumstances of the sexual assault on Plaintiff taking place in residential facility run by the department of mental health, the vulnerability of Plaintiff as a target, the residual psychological symptoms it has engendered, and the evidence presented at trial, the Court finds the $1 million award of compensatory damages to be appropriate. The evidence showed that Defendant failed to follow training prohibiting any sexual contact between employees and individual residents under any circumstances.

The evidence at trial provided a sufficient basis from which the jury could conclude that

Plaintiff sustained actual damages. In this case, the jury awarded substantial compensatory damages inasmuch as the evidence established mental distress resulting from the violation of Plaintiff's rights. Because it is difficult to quantify the extent the psychological injury might cause, the undersigned will defer to the jury, equipped with collective wisdom that life's experiences confer and armed with all of the evidence presented in the three-day trial, to determine the amount that would adequately compensate Plaintiff.

To be entitled to punitive damages, the plaintiff must prove that the defendant's conduct was "motivated by evil motive or intent, or ... involve[d] reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983). "Punitive damages punish a defendant for outrageous, intentional, or malicious conduct, and deter similar extreme conduct in the future. It is a question of fact whether a defendant's conduct was motivated by an evil motive or involves reckless indifference to the federally protected rights of others." Schaub v. VonWald, 638 F.3d 905, 922-23 (8th Cir. 2011) (footnote and citation omitted).

"Juries have considerable flexibility in determining the level of punitive damages." Ondrisek v. Hoffman, 698 F.3d 1020, 1028 (8th Cir. 2012) (citing BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 568 (1996)). Under the Fourteenth Amendment's Due Process Clause, "grossly excessive civil punishment" is prohibited. Id. (quotation and citation omitted). "Similar to compensatory damages, punitive damages are grossly excessive if they 'shock the conscience of this court or ... demonstrate passion or prejudice on the part of the trier of fact.'" Id. (quoting Stogsdill v. Healthmark Partners, L.L.C., 377 F.3d 827, 832 (8th Cir. 2004)).

In relevant part, the punitive damages instruction permitted the jurors to award additional

damages if they found the following:

If you find by the greater weight of the evidence that the conduct of Albert Lee Borders, ..., was outrageous because of defendant Albert Lee Borders evil motive or reckless indifference to the rights of others, then in addition to any damages which you found plaintiff entitled to, you may award plaintiff an additional amount as punitive damages in such sum as you believe will serve to punish Albert Lee Borders and to deter defendant Albert Lee Borders and others from like conduct.

If you decide to award punitive damages, you should consider the following in deciding the amount of punitive damages to award:

> 1. How reprehensible defendant Albert Lee Borders conduct was. In this regard, you may consider whether the harm suffered by the plaintiff was physical or economic or both; whether there was violence, deceit, intentional malice, reckless disregard for human health or safety; whether others were harmed by the same conduct of defendant Albert Lee Borders that harmed the plaintiff; and whether there was any repetition of the wrongful conduct and past conduct of the sort that harmed the plaintiff....

(ECF No. 105, Instruction No. 12).

The following factors are considered when analyzing "whether a punitive award shocks the conscience or demonstrates prejudice":

> (1) the degree of reprehensibility of the defendant's conduct;
>
> (2) the disparity between actual and potential harm suffered and the punitive damages award (often stated as a ratio between the amount of the compensatory damages award and the punitive damages award); and
>
> (3) the difference between the punitive damages award and the civil penalties authorized in comparable cases.

Id. (quotation and citation omitted). These factors collectively serve as "guideposts ... to ensure proper notice of the penalty associated with [the defendant's] conduct." Id.

"Perhaps the most important indicium of the reasonableness of a punitive damages award is

the degree of reprehensibility of the defendant's conduct." Gore, 517 U.S. at 575. Five factors are considered in evaluating the degree of reprehensibility:

> whether ... the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 419 (2003).

In the instant case, the evidence clearly substantiates the first two reprehensibility factors. The evidence at trial clearly showed the harmful and long-term impact the sexual contact on Plaintiff a resident at the habilitation center whose first experience with sexual intercourse would be a rape. Dr. Weinstein noted Plaintiff "has been described as being vulnerable to victimization by others due to intellectual disability." (Deft.'s Exh. A at 2).

"The second and perhaps the most commonly cited indicium of an unreasonable or excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff." Gore, 517 U.S. at 580. Here, the Court finds that the 3:1 ratio between punitive and compensatory damages is not too great. "[T]he Supreme Court has repeatedly intimated that a four-to-one ratio is likely to survive any due process challenges given the historic use of double, treble, and quadruple damages as a punitive remedy." Wallace v. DTG Operations, Inc., 563 F.3d 357, 363 (8th Cir. 2009).

A high ratio may be appropriate based on the particularly reprehensible conduct or where actual damages are nominal. See JCB, Inc. v. Union Planters Bank, NA, 539 F.3d 862, 876 (8th Cir. 2008) ("Punitive damages may withstand constitutional scrutiny when only nominal or a small amount of compensatory damages have been assigned, even though the ratio between the two will necessarily be large."). Clearly the jury's award of $1,000,000 actual damages in this case is not a nominal

amount that might excuse a higher ratio. As such, a single-digit multiple should be an outer limit on Plaintiff's award. See State Farm, 538 U.S. at 425 ("[I]n practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process."); Williams v. ConAgra Poultry Co., 378 F.3d 790, 799 (8th Cir. 2004) ("In the absence of extremely reprehensible conduct against the plaintiff or some special circumstances such an extraordinary small compensatory award, awards in excess of ten-to-one cannot stand.").

In State Farm, the Court pointed to traditional remedies of "double, treble, and quadruple damages" and stated that "they demonstrate what should be obvious: [s]ingle digit multipliers are more likely to comport with due process, while still achieving the State's goals of deterrence and retribution, than awards with ratios in range of 500 to 1 or ... 145 to 1." Id. (internal citation omitted). While suggesting the ratios alone cannot control the analysis, the Supreme Court has repeatedly intimated that a four-to-one ratio is likely to survive any due process challenges given the historic use of double, treble, and quadruple damages as a punitive remedy. See Pac. Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 23-24 (1991) (calling a punitive damages award that was "more than 4 times the amount of compensatory damages ... close to the line."); Gore, 517 U.S. at 581 & n. 33 (citing ratios from the remedy provisions of historical statutes that awarded, double, treble or quadruple damages). Thus, in accordance with this guidance from the Supreme Court, the Court believes a three-to-one ratio is appropriate.

"Addressing the third Gore guidepost, this court must also compare damages in similar civil cases." Ondrisek, 698 F.3d at 1030. The Court has considered other recent state and federal decisions discussing awards in similar cases, mostly prison rape cases and some rape cases by police

officers.[2] E.g., Daskalea v. District of Columbia, 227 F.3d 433 (D.C.Cir. 2000) (affirming a $350,000 jury award for ongoing sexual abuse of a female inmate in light of a documented history of routine sexual abuse of women prisoners); Rogers, 152 F.3d at 798 (award of $100,000 in damages upheld in § 1983 substantive due process case where plaintiff was raped by a police officer after a traffic stop and the testimony at trial showing the harmful impact the incident had on her); Mathie v. Fries, 121 F.3d 808, 813-14 (2d Cir. 1997) (upholding award of $250,000 in compensatory damages and $200,000 in punitive damages is appropriate where corrections officer sexually abused and forcibly sodomized pretrial detainee); Amador v. Galbreath, 2013 WL 1755784, *3 (W.D.N.Y. April 24, 2013) (awarding $250,000 in compensatory damages and $250,000 in punitive damages where corrections officer sexually assaulted inmate); Etters v. Shanahan, 2013 WL 787344, *6-7 (E.D.N.C. Feb. 6, 2013) (awarding $100,000 in compensatory damages and $100,000 in punitive damages to inmate for four forcible sexual violations with some assault involving multiple sexual violations); Ortiz v. Lasker, 2010 WL 3476017 (W.D.N.Y. 2010) (awarding $250,000 in compensatory and $250,000 in punitive damages to inmate raped twice by corrections officer); Cash v. County of Erie, 2009 WL 3199558, *3-4 (W.D.N.Y Sept. 30, 2009) (entering default judgment of $500,000 compensatory and $150,000 punitive damages against a detention center guard who assaulted and raped an inmate); Hall v. Terrell, 648 F.Supp.2d 1229 (D.Colo. 2009) (entering default judgment of $353,070.41 in compensatory and $1 million in punitive damages against an officer who routinely sexually assaulted

---

[2] In support, Plaintiff submitted documents from Verdict Reporter, Inc. involving cases of more reprehensible conduct such as sexual battery to a minor daughter, sexual assault and rape of a choir director by the pastor where there had been numerous complaints of sexual harassment brought to the attention of church leaders, professional malpractice stemming from a failure to report sexual abuse of a minor family member, and a wrongful death case where a minor was raped and murdered at school.

and raped an inmate in his custody); Chavez v. Poleate, 2010 WL 678940, at 3-4 (D.Utah 2010) (awarding non-economic compensatory damages in the amount of $350,000 and $1 million in punitive damages for rape by prison guard causing physical injury and resulting in psychological symptoms). See generally Trinidad v. City of Boston, 2011 WL 915338 (D.Mass. 2011) (collecting cases and noting that compensatory damages for "sexual assault and rape of inmates or detainees by prison guards and corrections officers have ranged from $100,000 to $500,000."). Although the cases vary in the amounts awarded as well as the conduct being punished, all of the cases suggest that the jury was not out of bounds with awards of punitive damages ranging in the amounts from $100,000 to $1 million.

After comparing the punitive awards in cases involving sexual assaults by prison officials and law enforcement officers as the most factually similar cases located, the Court finds the $3 million punitive award, while very large, is not constitutionally excessive. As the Court finds the jury's verdict to be reasonable in light of the evidence presented at trial, the Court will deny Defendant's motion. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Albert Lee Borders' Motion for Judgment Notwithstanding the Verdict or, In the Alternative, for a New Trial (Docket No. 116) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff shall submit her consolidated and supplemental Motion for Attorney's Fees within 14 days from the date of this Order. Defendant shall file his

response 14 days after the supplemental fee request is filed, and Plaintiff shall file her reply brief in support of her request for attorney's fees 10 days thereafter.

        /s/Terry I. Adelman
UNITED STATES MAGISTRATE  JUDGE

Dated this   26th   day of August, 2013.